# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CIVIL CASE NO. 1:10cv203

| | | |
|---|---|---|
| YVETT C. RUDOLPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF DECISION** |
| | ) | **AND ORDER** |
| BUNCOMBE COUNTY | ) | |
| GOVERNMENT, AMANDA | ) | |
| STONE, MARTIN "MARTY" | ) | |
| PHILLIPS and ANN LUNSFORD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment as a Matter of Law [Doc. 43] and the Defendants' Motion for Summary Judgment [Doc. 49].

## PROCEDURAL HISTORY

On September 20, 2010, the Plaintiff, who is proceeding *pro se*, initiated this action claiming violations of the Americans with Disabilities Act of 1990(ADA) based on employment discrimination.[1]  [Doc. 1].  The Plaintiff

---

[1]Although the Plaintiff included reference to Title VII in the opening paragraph of her Complaint, her actual claims for relief are limited to the ADA.  During the summary judgment hearing, the Plaintiff conceded that she has no Title VII or Age Discrimination in Employment (ADEA) claims.  To the extent that the Plaintiff may have sought to assert any claims pursuant to Title VII or the ADEA, these are addressed at pp. 34-37,

alleges that she suffered unlawful discrimination in that the Defendants refused reasonable accommodations for her disability, adult attention deficit hyperactivity disorder (ADHD); she was ridiculed for making requests for accommodations; she was falsely accused of insubordination and harassed by unreasonable monitoring; and she was wrongfully discharged based on false accusations. [Id. at 4].

On September 24, 2007, the Plaintiff was hired as an Income Maintenance Caseworker for the Buncombe County Department of Social Services (DSS) Food and Nutrition Program, which administers the County's food stamp program. [Id. at 5-6]. She was discharged on November 9, 2007. [Id. at 10]. In January 2008, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in which she stated that she had been discriminated against and denied an accommodation in violation of the ADA. [Doc. 1-7 at 4]. She subsequently received a Right to Sue letter and thereafter timely initiated this action. In the Complaint, the Plaintiff alleged causes of action for refusal of reasonable accommodations, hostile work environment based on harassment about her disability, unlawful discharge, wrongful discharge and promissory estoppel.

_____

*infra*.

2

The parties have filed cross-motions for summary judgment. In view of the fact that the Plaintiff is proceeding *pro se*, the Court provided notice to her of the burden she must carry in responding to the Defendants' Motion for Summary Judgment and provided an additional period of time within which to file a response. [Doc. 50]. The Plaintiff's initial response to the Defendants' motion was stricken because she failed to comply with the Pre-Trial Order and Case Management Plan when she filed a seventy-six page brief, well in excess of the limit of twenty-five pages. [Doc. 54]. She was again given additional time to file a compliant response to the motion. [Id.]. Despite this, the Plaintiff filed another noncompliant response which appeared to be an attempt to consolidate into a singular document a brief in opposition to the motion with an opposing affidavit. [Doc. 56]. In an effort to keep this matter moving, the Court has not stricken the second response but rather has accepted it as the Plaintiff's responsive brief and has also received it as her affidavit to the very limited extent that it can be used as such.

The motions having been fully briefed and the Plaintiff having been afforded a hearing, the case is ripe for disposition.

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), cert. denied 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the non-moving

4

party who must convince the Court that a triable issue does exist.  Id.

> A party opposing a properly supported motion for summary judgment
>
> "may not rest upon the mere allegations or denial of [her] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial."  Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id.

_____Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  In so doing, however, the Court may only consider admissible evidence.  Fed.R.Civ.P. 56.

In that regard, the Plaintiff attached to her second noncompliant response a page that she title "Affidavit," in which she swore that the contents of her responsive brief are "true to the best of my knowledge and recollection." [Doc. 56 at 22].  Much of that document, however, is legal argument, inadmissible hearsay, and pure supposition on the part of the Plaintiff.

5

Portions also contradict her deposition testimony. As such, very little of that document can be received as evidence in opposition to the Defendants' Motion. To the extent that it may be considered by the Court, however, it has been.

The Plaintiff also attached to her response a copy of an Individualized Plan for Employment developed on her behalf by the North Carolina Division of Vocational Rehabilitation Services on March 10, 2011 and a Psychological Evaluation dated February 7, 2011. [Doc. 56 at 24-25; 35]. These documents, both of which are unauthenticated hearsay, have not been shown to have any relevance to the time period at issue and will not be considered by the Court.

In her arguments to this Court, the Plaintiff also relies on an unauthenticated document attached to her Complaint which purports to show a determination by the Employment Security Commission of North Carolina concerning a claim by the Plaintiff for unemployment benefits. [Doc. 1-7]. Pursuant to statute, that document is inadmissible in this proceeding. N.C. Gen. Stat. 96-4(x)(8).[2] It is also not relevant to this action.

To the extent that either party has submitted evidence to the Court

_____

[2] At the time Plaintiff submitted the ESC document to this Court her doing so was prohibited by N.C. Gen. Stat. §96-4(t)(8), which has since been re-codified as §96-4(x)(8). At the summary judgment hearing Plaintiff expressed that she was unaware of the existence of this statute.

6

which is inadmissible, it has been excluded. This includes evidence which has not been authenticated and/or which is hearsay (other than that falling within a hearsay exception). The Court has also excluded evidence which is not relevant to the issues at hand.

In the Response to the Defendants' motion, the Plaintiff has disputed the meaning of portions of her deposition testimony[3] and has also attempted to revise, modify and expand that testimony. As stated above, the Plaintiff attempted to convert her Brief into an affidavit. However, "a party against whom summary judgment is sought cannot create a jury issue by identifying discrepancies in [her] own account of the facts." <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 186 n.7 (4th Cir. 2001) (citing <u>Rohrbough v. Wyeth Laboratories, Inc.</u>, 916 F.2d 970 (4th Cir. 1990)); <u>Hernandez v. Trawler Miss Vertie Mae</u>, 187 F.3d 432, 438 (4th Cir. 1999). Thus, to the extent that the Plaintiff has refuted, denied, modified, re-characterized and/or expanded her deposition testimony in her responsive brief, the Court can consider only the testimony made under oath at the deposition.

---

[3]After the hearing on the summary judgment motions, the Plaintiff attempted to make <u>ex parte</u> contact with the Court by sending an email to the Clerk of Court asserting that a deposition cannot be used in a proceeding unless the original transcript has been filed with the Court. This Court, of course, has adopted an electronic filing system, such that the only "originals" maintained by the Court are the electronic versions thereof. The transcript of the Plaintiff's deposition is filed in the Court's electronic docket at Docket Entry 40-1.

## FACTUAL BACKGROUND

The evidence, taken in the light most favorable to the Plaintiff as the non-moving party,[4] shows the following. On September 24, 2007, the Plaintiff was hired by DSS as an Income Maintenance Caseworker II. [Doc. 49-2]. By statute, the position was probationary for the first two years and the Plaintiff was an at-will employee during that time. [Id.] (citing N.C. Gen. Stat. §126-1.1). Prior to working for the Buncombe County DSS, the Plaintiff had worked for the State of Louisiana in the Department of Health and Hospitals until her retirement. [Doc. 40-1 at 4-5]. The position which she held in Louisiana was similar to her position with DSS.

The Plaintiff testified that she was diagnosed in 2006 with ADHD by Dr. Jerry Sanders. [Doc. 40-1 at 9]. At that time, she began taking Adderall for the condition and her dosage was never increased. [Id. at 10-13]. At times, the Plaintiff did not take the full dosage which had been prescribed for her when she felt that she did not need two daily doses. [Id. at 14]. According to the Plaintiff, the medication "definitely" helped her symptoms. [Id. at 16]. No other medications were prescribed for this condition and she did not take any

---

[4]The Plaintiff also filed a motion for summary judgment. [Doc. 43]. As such she is the non-moving party as to only one of the two motions before this Court. [Doc. 49]. The Court, however, will primarily address the Defendants' motion. Therefore, this factual background is presented in the light most favorable to the Plaintiff.

8

other medication. [Id. at 16-17]. In fact, when the Plaintiff applied for the job at DSS, she noted on her application that she had ADHD which was managed, meaning managed with medication. [Id. at 42]. The Plaintiff testified at her deposition that during her work at DSS, her condition did not impair her ability to work because it was controlled with medication.[5] [Id. at 37]. The Plaintiff also testified that, as related to this job with DSS, her disability did not interfere with her ability to learn and there was nothing about the job that she was unable to learn. [Id. at 144].

The Plaintiff nonetheless claims that the Defendants failed to accommodate her need to use "out cards" for case files. [Id. at 199]. The Plaintiff, who was being trained by DSS, was not allowed to work on cases without supervision which meant that other caseworkers took her files to make entries. [Id. at 200-201]. According to the Plaintiff, if those workers had used "out cards" showing that they had the files, she would have known where the files had been taken. [Id.]. That, however, was not the protocol for DSS. The Plaintiff thought that her system was superior, but her immediate supervisor, Ann Lunsford, insisted that the files be set up and managed in accordance

---

[5]In her brief opposing the Defendants' motion, the Plaintiff disputes this statement. [Doc. 56 at 3]. For the reasons set out above, the Court can only consider the sworn deposition testimony.

9

with DSS protocol, which included not having any files out in the open. [Id. at 210-216]. The Plaintiff testified that she believed her system would have saved time for everyone in the office. [Id. at 213].

The Plaintiff also used a type of diary system different from that used by DSS. [Id. at 204]. Instead of tracking files by number, as the Plaintiff was accustomed to doing in Louisiana, DSS tracked them by name. [Id.]. Since the Plaintiff did not convert to using the DSS system, she had to develop an alternate system which only she was using and this created a "hardship" on her. [Id.]. According to the Plaintiff, Lunsford wanted her to use the DSS system because Lunsford had "a control issue" and was "inconsiderate." [Id. at 205-06]. The Plaintiff conceded, however, that she never told Lunsford that in order to accommodate her disability, she needed to use the alternate system. [Id. at 206-08]. The Plaintiff testified that in her opinion, it was all about control with Lunsford. [Id. at 208].

These are the only two incidents of refusal to accommodate that the Plaintiff identified during her deposition.[6] [Id. at 214]. The Plaintiff admitted that she preferred to use a handwritten log instead of an electronic log and

---

[6]The Plaintiff ambiguously referred to "color coding" during oral argument at the hearing. In fact, during argument Plaintiff made several lengthy statements regarding the facts that are at variance with her deposition testimony. Oral argument, however, is not testimony and the Court cannot consider it as a forecast of evidence.

was allowed to do so. [Id. at 214-15]. She also admitted that another coworker, Linda Rogers, translated a list of terms used by the Plaintiff in her job in Louisiana to the North Carolina equivalents in order to assist her. [Id.]. The Plaintiff did not attribute to her coworkers prejudice towards her disability; instead, she felt her coworkers were intimidated by the supervisors. [Id. at 219].

The Plaintiff felt that Lunsford refused to take advantage of her experience in the Louisiana system. [Id. at 221]. When the Plaintiff would offer to perform certain tasks which she had done in Louisiana, coworker Rogers would reply that "We don't do those." [Id. at 224]. At one point, Lunsford told the Plaintiff to forget everything she had known in Louisiana and Rogers stated that the Plaintiff was doing things she did not need to be doing. [Id. at 225]. Lunsford counseled the Plaintiff against telling other DSS workers what to do and criticized the Plaintiff about working on cases without having been approved to do so by her supervisor. [Id. at 127-28]. The Plaintiff claims that this created a hostile work environment. [Id. at 227].

The Plaintiff was monitored during the period of her training and as a result was asked why she would move from one place to another within the office. [Id. at 240-41]. The Plaintiff conceded that she was not the only

11

employee who was monitored, even though she was the only new employee and the only one in training. [Id. at 240-44]. Angie Jenkins, who was another superior, spoke to the Plaintiff on more than one occasion about not chewing gum at work.[7] [Id. at 243].

The Plaintiff was not allowed to answer the telephone or take complaints because her training had not been completed. [Id. at 260]. Her training was prolonged because DSS had just implemented a new policy change which took the time of supervisors who were themselves being trained.[8] [Id.]. The Plaintiff felt that during this time, "if [she] did anything, [she] could get fussed at, even though [she] might have known how to do it[.]" [Id.].

On October 26, 2007, the Plaintiff telephoned a client receiving food stamps in order to verify his income. [Id. at 244-59]. She made the call rather than sending him verification forms so that his benefits would not be late or denied. [Id. at 256]. The Plaintiff reviewed the client's bank deposits and income and noted that his wife was on a joint bank account with him and was listed on the lease to the apartment where he lived. [Id. at 266]. During the

---

[7]The Plaintiff admitted that chewing gum had nothing to do with her ADHD. [Id. at 245].

[8]During oral argument, the Plaintiff claimed that her training took longer because of her disability. The Plaintiff, however, was unable to point to any evidence in the record that would support such a contention. As previously noted, oral argument may not be used to supplement, amend or expand deposition testimony taken under oath.

call, she asked the client a series of questions. [Id. at 267]. She had not been trained or told to ask these questions but did so based on her understanding of federal and state policy gleaned from her work experience in Louisiana. [Id.]. When the client told the Plaintiff that his wife was not living with him, she asked him for a means of verifying his statement and asked if she could call his wife.[9] [Id. at 269]. The client gave the Plaintiff his wife's telephone number and she called the wife to verify her residence. [Id.]. In making this call, the Plaintiff provided to the wife the identity of the DSS client and asked whether the wife was living with him and using his bank account. [Id. at 271]. The wife was not a DSS client. [Id. at 272]. After speaking with the wife, the Plaintiff called the client again and asked about certain deposits made into his bank account and he responded that a friend of his, not his wife, had given him the money. [Id. at 273]. The Plaintiff then asked for the telephone number of the friend and was prepared to call him as well, except that when she began to dial it she realized the number she had been given did not have a sufficient number of digits.[10] [Id. at 273-76]. The Plaintiff admitted that during her call

_____

[9]The Plaintiff admitted that the normal method of making such verification is to send a verification form to the client who would then present it to the wife. [Id. at 283]. In this manner, she acknowledged that the client's confidentiality would not have been breached by the agency. [Id.].

[10]Again, the Plaintiff admitted that the normal means of verification would have been to send the form to the client. [Id. at 283-84].

with the client, she attempted to coach him as to the manner to respond so that he would not admit that he was receiving more money than qualified him for benefits.[11] [Id.].  The client  became very upset with the Plaintiff because she had made contact with his estranged wife. [Id.].  The Plaintiff then informed one of her superiors of the telephone calls and was counseled that she should not have made the telephone calls but should have noted that the income was questionable. [Id. at 277-78].  The Plaintiff admitted that this incident was not caused by and had nothing to do with her ADHD. [Id. at 286-87].  Indeed, the Plaintiff did not feel she had done anything wrong based her previous experience in Louisiana.  She did, however, believe that DSS used this incident as a pretext to end her employment in order to hire someone else who had been trained or who had experience in the Buncombe County system. [Id.].

The Plaintiff testified that she was offered employment with DSS based on the letter sent to her by Amanda Stone, the Director of DSS.[12] [Id. at 289-

---

[11]According to the Plaintiff, if she could have gotten the client to characterize the money as a loan, he would not have gone over the income limit to qualify for food stamps. [Id.].

[12]The Plaintiff signed this letter underneath the following statement: "I accept employment with the Buncombe County Department of Social Services under the terms spelled out in this letter." [Doc. 49-2 at 4].  The Plaintiff has not alleged a claim for breach of contract.  Instead, she bases her claim of promissory estoppel on this letter.

14

92].  She acknowledged that the letter included a notice that during the initial six month period of employment, she was not eligible for benefits and that a twenty-four month period of employment must be successfully completed before achieving career status.  [Id. at 289-90].   The Plaintiff also acknowledged that she was an employee at will and would remain so for the entire two year probationary period.[13] [Id. at 302, 338].  The Plaintiff testified that she nonetheless believed that she was fired as a pretext for replacing her with someone who was not disabled. [Id.].

On November 9, 2007, the Plaintiff was provided a letter of discharge from Amanda Stone, the DSS Director.  [Doc. 49-2 at 5].

> After careful consideration of your work history with our Department and your supervisor's input, it is with regret that I must inform you that we are not offering you permanent employment with our agency.  As you know, you have been coached regarding your ability to adhere to Food Assistance Unit policies and procedures.  You have failed to follow directions with your trainers and supervisor.  In addition, I have been informed that you contacted a client's family member at work and their acquaintance in another state to question them about financial information, when you were instructed to do otherwise.  This action compromises our confidentiality standards.

[Id. at 5].  In support of the Defendants' Motion for Summary Judgment, Stone

---

[13]The letter refers to a six month period, followed by a twenty-four month period, but also refers to a two year probationary period.  [Doc. 49-2 at 3].  Taken in the light most favorable to the Plaintiff, the at-will period was at least two years.  Since the Plaintiff was employed by DSS for only a few weeks, this discrepancy is irrelevant.

15

provided an affidavit in which she stated that her decision to terminate the Plaintiff was due to the Plaintiff's failure to adhere to DSS policies and procedures, to follow directions and taking actions which "compromised our agency's confidentiality standards." [Doc. 49-2].

Martin Phillips was responsible for supervising Lunsford, the Plaintiff's direct supervisor. [Doc. 49-3]. Phillips was informed that the Plaintiff refused to follow the directives of her supervisors, worked outside the guidelines of state and federal policy and inappropriately contacted the estranged wife of a DSS client. [Id.]. Phillips testified that "[b]ased upon policy governing our Agency, I considered Plaintiff's contact to a client's estranged wife to be a breach of the client's confidentiality." [Id.]. Based on this conduct as well as reports of insubordination, Phillips made the decision to terminate the Plaintiff's employment. [Id.]. The Plaintiff's position was posted internally after her termination because Buncombe County was experiencing a reduction in force. [Id.]. Her position was filled on November 26, 2007 with an employee who had been affected by that reduction in force. [Id.].

## DISCUSSION

### The Defendants' Motion for Summary Judgment.

#### The ADA claims.

##### The Plaintiff's disability.

The Defendants' first argue that the Plaintiff has failed to present a forecast of evidence that she has a disability as defined by the statute. The only evidence that the Plaintiff has been diagnosed with ADHD is her own deposition testimony that she has been informed of such diagnosis, and a health care professional's letter stating such. The letter, however, was not authenticated and the Plaintiff made no effort to present evidence bringing the letter within the perview of Federal Rule of Evidence 803(4) to be admissible. At the summary judgment hearing, however, the Defendants appeared willing to concede that the Plaintiff had informed them of her ADHA diagnosis. This shortcoming in the Plaintiff's forecast of evidence will, therefore, not be addressed further.

Having ADHD, however, does not necessarily dictate that the Plaintiff was disabled. The determination of whether a plaintiff is disabled within the meaning of the ADA may be made by the Court as a matter of law. Heiko v. Colombo Savs. Bank, 434 F.3d 249, 254 (4th Cir.), cert. dismissed 548 U.S.

941, 127 S.Ct. 34, 165 L.Ed.2d 1013 (2006).  The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. §12102(1). ADHD may qualify as an impairment under the ADA.  Lipscomb v. Technologies, Services & Information, Inc., 2011 WL 691605 **13 (D.Md. 2011) (citing Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 506-09 (7th Cir. 1998)).  In order to qualify, however, it must restrict the ability to perform a major life activity in comparison to other persons.  Id.  Working, walking, seeing, hearing, speaking, and learning are major life activities. 29 C.F.R. §1630.2.

The Plaintiff specifically testified in her deposition that her ADHD did not interfere with her ability to work.  According to her, the most prominent manifestation of her ADHD is the inability to formulate speech under stress.[14] Although she also claims that she has periods of inability to focus and organize, during her deposition and in the responsive brief, the Plaintiff presented substantial testimony and evidence that she has learned to manage

---

[14]It bears noting that during her deposition, the Plaintiff spoke at length in answering questions and providing detail with good recollection.  Likewise, during oral argument the Plaintiff showed no impairment that substantially limited her ability to speak.

her ADHD with medication and behavior modification. [Doc. 40-1 at 16, 37, 42; Doc. 56 at 13-15]. Whether the Plaintiff has a disability must be determined in light of mitigating measures. <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (determination of disability is made in light of mitigating measures), <u>superseded by statute</u> Amendments Act of 2008, <u>Pub.L.No. 110-325</u>, §3(4)(E)(i), 122 Stat. 3553 (2008). Since the Plaintiff herself admits in her testimony that her medications alleviated any disabling effects of ADHD, she has not presented a forecast of evidence of disability. Even though she did not address this in her summary judgment brief, the Plaintiff asserted at the hearing that <u>Sutton</u> is no longer the law. She is correct that <u>Sutton</u> has been superseded by statute. <u>Id.</u> That statutory modification, however, was effective on January 1,2009, and is not retroactive. <u>Herzog v. Loyola College in Maryland, Inc.</u>, 2009 WL 3271246 **5 n.3 (D.Md. 2009); <u>Schneider v. Giant of Maryland, LLC</u>, 389 F.App'x. 263 (4th Cir. 2010); <u>Lyons v. Shinseki</u>, ___ F.App'x. ___, 2011 WL 5588836 (4th Cir. 2011). The events of which the Plaintiff complains occurred in September, October and November 2007. Hence, <u>Sutton</u> applies to this case, and the new statute does not. At the summary judgment hearing, the Plaintiff forthrightly conceded that she has no contrary argument to <u>Sutton</u> if it does

19

apply.

In addition, the Plaintiff adamantly pointed to her long and successful work history in Louisiana, claiming that she performed well in her previous position. Herzog, 2009 WL 3271246 at **6-7 (plaintiff's successful academic career and claim that his ADHD was mitigated by medication and behavior modification negated showing of any substantial limitation); Schneider, 389 F.App'x. 263; Sarkissian v. West Virginia University Bd. of Governors, 2008 WL 901722 (N.D.W.Va. 2008), affirmed 332 F. App'x. 113 (4th Cir. 2009). She also claimed that during her work experience with DSS, she had superior methods of performing tasks, was able to learn everything required for the job [Doc. 40-1 at 144][15] and was actually prevented from performing work due to the controlling nature of her supervisor. For these reasons, the Plaintiff's forecast of evidence fails to make the prima facie showing that her ADHD substantially impaired her ability to perform a major life activity in comparison to other persons.[16]

_____

[15]During the hearing, the Plaintiff claimed that her disability interfered with her ability to learn. Her sworn testimony, however, was that she was able to learn everything necessary to perform the job at hand.

[16]At the summary judgment hearing, the Plaintiff made the curious argument that the EEOC had made a determination that she was, in fact, disabled by issuing to her a notice of right to sue. The Plaintiff did not specify whether she contended such determination was evidentiary or conclusive. Either way, the Plaintiff has cited to no authority for either the proposition that the Notice of Right to Sue is a determination as

Although the Defendants apparently concede that the Plaintiff has shown a record of having been diagnosed with ADHD and prescribed medication therefor, she has not shown that she has a record of a disability within the meaning of the ADA. Libscomb, 2011 WL 691605; Herzog, 2009 WL 3271246 (Mere receipt of medical treatment insufficient to create record without showing the condition substantially limited major life activity). Likewise, she has neither alleged nor shown that the Defendants regarded her as having an impairment which substantially limited her in one or more life activities. Id.; Libscomb, 2011 WL 691605. Although the Plaintiff disclosed the condition on her employment application, she also disclosed it as "managed" with medication, thus negating that she was regarded as having a disability. Id.

It is significant that the Plaintiff was discharged for misconduct in breaching the confidentiality of an agency client and for insubordination. Even though not clearly articulated by the Plaintiff, her argument at the summary judgment hearing appears to have shifted to one indicating that her ADHD prevented her from learning the DSS procedures, so she relied on what she had learned in Louisiana, which would have allowed at least the offending

---

to disability or that it may be considered as such by the Court.

contacts with non-clients.  However, "'misconduct - even misconduct related to a disability - is not itself a disability' and may be the basis for dismissal." Halpern v. Wake Forest University, ___ F.3d ___ No.10-2162 at *17 (4th Cir. Feb. 28, 2012) (quoting Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 n.3 (4th Cir. 1997)).  Moreover, Plaintiff did not take the position that her ADHD affected her ability to learn until the summary judgment hearing.  She has presented no forecast of evidence to support this argument, and it contradicts her deposition testimony.

For these reasons, the Plaintiff has failed to present a forecast of evidence that she was disabled, as defined by the ADA, at the time of the incidents at issue.  In the interest of finality, however, the Court will proceed to address the other claims raised by the Plaintiff.

### Failure to make reasonable accommodation.

The Plaintiff also claims that the Defendants failed to make reasonable accommodation for her disability.  In order to defeat summary judgment on this claim, the Plaintiff must present a forecast of admissible evidence (1) that she had a disability within the meaning of the ADA; (2) that the Defendants had notice of this disability; (3) that with reasonable accommodation she could perform the essential functions of her position and (4) that the Defendants

failed to make such accommodation.  Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x. 314, 322 (4th Cir. 2011) (citing Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001), cert. denied 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002)).  As stated above, the Plaintiff has failed to present evidence of disability.  The Court will also address the issue of whether the Plaintiff has presented a forecast of evidence as to the third and fourth elements.

The ADA defines "reasonable accommodation" as including modifications of training materials and policies.  Id. (Citing 42 U.S.C. §12111(9).  The Plaintiff identifies two ways in which she asserts that the Defendant failed to accommodate her claimed disability.  She was not allowed to use "out cards" and she was required to set up files according to DSS protocol.[17]  In her deposition, however, the Plaintiff did not testify that she needed to use "out cards" to accommodate her ADHD.  She testified that this was simply a superior method of keeping track of files.  She also conceded that she did not inform her superiors at DSS that she needed to use a different

---

[17]During the hearing, the Plaintiff claimed that she needed the accommodation of being able to verbalize instructions.  During her deposition, however, she failed to raise this as another failure to accommodate.

filing system in order to accommodate a disability.[18] [Doc. 40-1 at 208]; Schneider, 389 F. App'x. at 269 (ADA claims fails where plaintiff did not inform employer that the reason he needed an accommodation was because of disability). "A party that fails to communicate, by way of initiation ... may ... be acting in bad faith." Crabill, 423 F. App'x. at 323 (quoting Beck v. Univ. of Wisconsin Bd. of Regents, 75 F.3d 1130, 1136 (7th Cir. 1996)). This forecast of evidence is insufficient to make a prima facie showing that the Plaintiff asked for and was denied reasonable accommodation based on a disability disclosed to the Defendants. Schneider, 389 F. App'x. at 270. Instead, the Plaintiff's evidence tends to show that she believed her methods of performing certain work tasks were superior to the protocol at DSS, and that her supervisors rejected her methods due to control and personality issues. As such, the Plaintiff has failed to bring forth admissible evidence establishing a genuine issue of material fact on this issue.

Moreover, according to the Plaintiff's deposition testimony, the reasons provided by her superiors for not using the Plaintiff's alternate systems related to office efficiency and furthered the employer's interest in maintaining a uniform system that had been developed for this particular agency and its

---

[18]In fact, this claim is directly contradictory to the Plaintiff's testimony that she was able to learn to do any portion of this job.

24

employees. "An employer's judgment regarding the essential functions of its job is considered 'highly probative.'" Stockton v. Northwest Airlines, Inc., __ F.Supp.2d ___, 2011 WL 1258506 (D.Minn. 2011) (quoting Alexander v. Northland Inn, 321 F.3d 723, 727 (8th Cir 2003)). The Plaintiff's alternate systems would have created more work for other employees, not less. The ADA does not require an employer to make an accommodation that would impact other employees in their ability to perform their job duties, such as creating more work. Id. (citing Rehrs v. Iams Co., 486 F.3d 353, 357 (8th Cir. 2007)); Crabill, 423 F. App'x. at 323. "It is not the province of the court to question the legitimate operation of a ... facility or to determine what is the most productive or efficient [operation] for a facility." Rehrs, 486 F.3d at 358. Nor does a court "sit as a super-personnel department to review the wisdom or fairness of" an employer's employment decisions. Lors v. Dean, 595 F.3d 831, 835 (8th Cir. 2010) (internal quotations and citations omitted).

The Plaintiff has failed to present a forecast of evidence that raises a genuine issue of material fact as to whether the Defendants refused reasonable accommodation. Therefore, the Defendants are entitled to summary judgment dismissing this claim.

**Hostile work environment.**

To establish a *prima facie* case of hostile work environment pursuant to the ADA, the Plaintiff must show that (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently pervasive as to alter a condition of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. Rohan v. Networks Presentations,LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004). As noted above, the Plaintiff has failed to show that she is disabled within the meaning of the ADA, a fact which defeats her claim for hostile work environment. The Court will, nonetheless, examine whether the Plaintiff's forecast of evidence fails as to the other elements.

In order to prove a hostile work environment, the Plaintiff must prove that she was harassed "because of" her disability. Mason v. Wyeth, Inc., 183 F.App'x. 353, 361 (4th Cir. 2006) (citing Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003), cert. denied 540 U.S. 1177, 124 S.Ct. 1406, 158 L.Ed.2d 77 (2004)). That is, the Plaintiff must show that she was exposed to disadvantageous conditions of employment to which non-disabled employees were not exposed. Id.

26

According to the Plaintiff's testimony, she was harassed in that Lunsford refused to take advantage of the Plaintiff's prior work experience in Louisiana, told her to forget how to do things as they were done there, counseled her against instructing other co-workers in their jobs and instructed her not to work on cases during her training period.[19] These were the only examples of harassment cited by the Plaintiff. None these things, however, related to the Plaintiff's purported disability. Instead, each of them related to the Plaintiff's feeling that her prior work experience was not appreciated; her belief that she had superior means of performance; and that she was capable of doing more work than was allowed during her training period. In the Plaintiff's own words, Lunsford had "a control issue." [Doc. 40-1 at 205-06; 208]. Although the Plaintiff has argued that this conduct was harassing, she has not come forward with evidence showing that such conduct was "based on" the Plaintiff's ADHD. Rohan, 375 F.3d at 273 n.9.

Moreover, while the Plaintiff claims that Lunsford's behavior was "rude" and disrespectful of her, the ADA is not intended to guarantee "refinement and

---

[19]During the hearing, the Plaintiff argued that it was taking too long to train her due to her disability and Phillips became upset at the length of time. During her sworn deposition testimony, however, the Plaintiff testified it was taking so long to train her because the agency was in the process of implementing a new policy which was taking the supervisors' time, leaving less time for training the Plaintiff. [Doc. 40-1 at 257-260]. The Court cannot accept arguments made at the hearing which conflict with sworn testimony as creating issues of fact.

sophistication in the workplace." Mason, 183 F. App'x. at 362 (internal

quotation and citation omitted).  Nor are the Plaintiff's subjective statements

sufficient to show that Lunsford's conduct and comments to the Plaintiff were

based on anything other than her supervisory functions. Id., n.7.  "To recover

on a hostile environment claim, a plaintiff must demonstrate not only that [s]he

subjectively perceived [her] workplace environment as hostile, but also that

a reasonable person would so perceive it[.]" Fox v. General Motors Corp., 247

F.3d 169, 178 (4th Cir. 2001).  To determine whether an objective employee

in the Plaintiff's position would have considered Lunsford's conduct and

remarks harassing, the Court considers the frequency and severity thereof,

whether a physical threat was made, whether remarks were humiliating or

merely offensive and whether they interfered with the Plaintiff's employment.

Id.  The conduct must be much more severe than "a merely unpleasant

working environment." Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 753 (4th

Cir.), cert. denied 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

Complaints about the "ordinary tribulations of the workplace" do not rise to the

level of harassing conduct.  Rock v. McHugh, ___ F.Supp.2d ___, 2011 WL

2119035 (D.Md. 2011) (quoting Wang v. Metro. Life Ins. Co., 334 F.Supp.2d

853, 864 (D.Md. 2004)).

28

In substance, the Plaintiff's complaints with Lunsford all relate to Lunsford's supervisory decisions and management style, not to the Plaintiff's purported disability; and, those decisions were discrete and related to agency policy. Disciplinary measures and warnings alone are insufficient to show that a reasonable person would perceive the same as harassing.  Wiggins v. DaVita Tidewater, LLC, 451 F.Supp.2d 789, 801 (E.D.Va. 2006); Rock, supra. (Personnel decisions simply do not rise to the level of harassment).  While the Court considers the totality of the circumstances, the fact is that "many bosses are harsh, unjust and rude.  It is therefore important in hostile work environment cases to exclude ... personnel decisions that lack a linkage [to the disability].  Otherwise, the federal courts will become a court of personnel appeals." Lewis v. District of Columbia, 653 F.Supp.2d 64, 80 (D.D.C. 2009) (internal quotations and citations omitted).

> The task on summary judgment is to identify situations that a
> reasonable jury might find to be so out of the ordinary as to
> [create an] environment pervaded with discriminatory conduct
> aimed to humiliate, ridicule, or intimidate, thereby creating an
> abusive atmosphere.

EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 316 (4th Cir. 2008).  No such situation has been identified here and summary judgment dismissing this claim is granted.

**Wrongful discharge.**

The Plaintiff has pleaded claims that she has styled as "wrongful discharge" and "unlawful discharge." She has not articulated any substantive difference between these claims. The Court will, therefore, treat them together. The ADA allows for a claim for wrongful discharge. The Court will analyze these claims within the framework of such a claim.

A plaintiff claiming wrongful discharge pursuant to the ADA must show that (1) she is disabled; (2) she was otherwise qualified for the position; and (3) the discharge occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. Darcangelo v. Verizon Maryland, Inc., 189 F. App'x. 217, 218 (4th Cir. 2006) (citing Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 702 (4th Cir. 2001)). The first element was dealt with previously. The Court will now deal with the third element.

The evidence in this case is uncontroverted that the Plaintiff repeatedly failed to follow the directives of her supervisors, not only continuing to pull files and work on them after having been told not to, but also setting up files in a manner contrary to her instructions.[20] The Plaintiff admits the telephone call

---

[20]Indeed, the Plaintiff does not dispute that she did so, claiming that she knew how to do the job without training and that she had superior methods for performing the job.

30

to the DSS client which went against agency policy as well as the call to that client's estranged wife which violated his confidentiality. She also admits that she had personality conflicts with her supervisors and felt she could do more work than was given to her. Indeed, she admitted in her deposition that she performed work she had been told not to do. "The law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if [unlike here] the misconduct is related to a disability." Jones v. Am. Postal Workers Union Nat'l, 192 F.3d 417, 429 (4th Cir. 1999). Although the Plaintiff claims that her intentions were misconstrued by Lunsford and others, "the ADA is not violated when an employer discharges an employee because of a mistaken perception of misconduct[.]" Pence v. Tenneco Auto. Operating Co., Inc., 169 F. App'x. 808, 811 (4th Cir. 2006).

Even if the Plaintiff had established a prima facie case, the uncontroverted evidence shows a legitimate, non-discriminatory reason for the Defendants' decision to discharge the Plaintiff. Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 258 (4th Cir.), cert. denied 548 U.S. 941, 127 S.Ct. 34, 165 L.Ed.2d 1013 (2006). In her deposition, the Plaintiff conceded the facts showing that she did not follow the directives of her supervisors and breached

Case 1:10-cv-00203-MR   -DLH   Document 62   Filed 03/01/12   Page 31 of 39

the confidentiality of a DSS client. Although she claims that the policy she learned in Louisiana would have allowed her to make contact with the client's estranged wife, the evidence showed that the employer's perception was that she had violated its agency policy concerning confidentiality. DeJarnett v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998). It is that perception which is relevant, not the Plaintiff's own assessment of her conduct. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996).

Since the employer has come forward with a legitimate, nondiscriminatory reason for discharging the Plaintiff, she then must carry the burden of showing that the reasons for her termination were merely a pretext for discrimination. Evans, 80 F.3d at 959. The Plaintiff has not come forward with any evidence, other than her own speculation and subjective belief, that the employer desired a person in her job who had already been trained.[21] Marshall v. AT&T Mobility, 793 F.Supp.2d 761, 782 (D.S.C. 2011). She has also failed to present any evidence which creates a genuine issue of material fact as to a discriminatory animus for her termination. Id.; Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) (employee's own belief

---

[21]Indeed, the Plaintiff's position on this point is in direct conflict with her testimony that she came to the job already having been appropriately trained, citing her previous work experience in Louisiana.

and conclusory statements that he had been discriminated against insufficient to raise inference thereof).  The Court therefore grants summary judgment as to this claim as well.

### Promissory estoppel.

The Plaintiff presents a final cause of action which she identifies as being for "promissory estoppel with injury."  She argues that this is a claim pursuant to federal law under the ADA, but is unable to cite to any case recognizing such a federal claim.  To the extent that any claim based on promissory estoppel would lie, it would be a state law claim.  North Carolina, however, does not recognize promissory estoppel as an affirmative cause of action.  Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co., 86 N.C.App. 540, 544-46, 358 S.E.2d 539 (1987), affirmed 322 N.C. 107, 366 S.E.2d 441 (1988); Dealers Supply Co. v. Cheil Indus., 348 F.Supp.2d 579, 587 (M.D.N.C. 2004).  "The clear law in North Carolina prohibits the use of promissory estoppel in an offensive manner."  Crosby v. City of Gastonia, 682 F.Supp.2d 537, 547 (W.D.N.C. 2010), affirmed 635 F.3d 634 (4th Cir.), cert. denied __ U.S. __, 132 S.Ct. 122, 181 L.Ed.2d 37 (2011).  Summary judgment will, therefore, be granted as to this claim.

**The purported claims based on Title VII and age discrimination.**

During the hearing, the Plaintiff conceded that her only claims of discrimination are based on the ADA. During that hearing, however, the Plaintiff also made some ambiguous comments that suggest she may still be acting under the impression that Title VII provides a cause of action based on disability. For this reason, out of an abundance of caution and in the interest of finality, the Court addresses the purported claims based on Title VII and age discrimination.

Before a plaintiff may file a lawsuit alleging employment discrimination in violation of Title VII, the Age Discrimination in Employment Act (ADEA) or the ADA, she must first pursue and exhaust administrative remedies which necessarily include filing a timely charge of discrimination with the EEOC. 42 U.S.C. §2000e-5; 42 U.S.C. §12117(a); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009); Davis v. Va. Commw. Univ., 180 F.3d 626, 628 n.3 (4th Cir. 1999); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). "[T]he allegations contained in the administrative charge of discrimination [before the EEOC] generally operate to limit the scope of any subsequent judicial complaint." Chacko v. Patuxent Institution, 429 F.3d 505, 509 (4th Cir. 2005) (quoting Evans, 80 F.3d at 963). The United States Court

34

of Appeals for the Fourth Circuit has

> ma[d]e clear that the factual allegations in formal litigation must correspond to those set forth in the administrative charge. For example, the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis – such as race – and he introduces another basis in formal litigation – such as sex. A claim will also typically be barred if the administrative charge alleges one type of discrimination – such as discriminatory failure to promote – and the claim [raised in litigation] encompasses another type – such as discrimination in pay and benefits.

Chacko, 429 F.3d at 509.

On January 8, 2008, the Plaintiff filed a Charge of Discrimination with the EEOC against DSS. [Doc. 1-7]. In that Charge, which was documented as EEOC Charge No. 430-2008-00923, the Plaintiff alleged that she had been discriminated against based on disability. [Id.]. She did not check any other box specifying types of discrimination, such as race, color, sex, age, etc. [Id.]. The Plaintiff's complete description in that Charge of the discrimination she allegedly sustained is as follows:

> I was hired by the above referenced employer on September 24, 2007 as an Income Maintenance Caseworker II. My disability was disclosed to my employer on my employment application and throughout my employment. On October 31, 2007, I was called into a meeting by my supervisor, Ann Lunsford, and falsely accused of telling other workers what to do. I reminded Ms. Lunsford of my disability. Subsequently, I was subjected to harassment by Ms. Lunsford for various things related to performing my job. On November 9, 2007, I was terminated.

The reason given for my termination was my failure to follow directions with my trainer and supervisor. I was also accused of compromising confidentiality standards.

I believe I have been discriminated against and denied an accommodation in violation of the Americans with Disabilities Act of 1990.

[Doc. 1-7].

The investigation by the EEOC of this Charge was based on the Plaintiff's claim of discrimination in violation of the ADA. [Doc. 1-9]. Indeed, the Notice of Charge of Discrimination sent by the EEOC to the Defendants limited the type of discrimination alleged by the Plaintiff to the ADA and limited her claims to EEOC Charge No. 430-2008-00923. [Id. at 3]. As a result, both the Defendants' response to the Charge and the EEOC's investigation thereof were limited to alleged disability discrimination in violation of the ADA. On June 21, 2010, the EEOC provided the Plaintiff with a Dismissal and Notice of Rights related to EEOC Charge No. 430-2008-00923 in which she was advised that the EEOC was closing its file and she was provided with notice of her right to bring suit.[22] [Doc. 56 at 23].

---

[22]The boilerplate language contained within the Notice of Suit Rights is as follows: "Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, *or* the Age Discrimination in Employment Act[.]" [Doc. 56 at 23] (emphasis provided). Based on this heading, the Plaintiff claims that her Charge actually alleged other types of discrimination as well. [Doc. 56 at 8]. The heading is obviously intended to be generic while the Notice refers only to the actual charge in this case, EEOC Charge No. 430-2008-00923, a charge based on the ADA. [Id.]. The Court

36

As a result, any claim the Plaintiff may have attempted to raise in her Complaint based on Title VII and/or the ADEA is barred because she has failed to exhaust her administrative remedies. <u>Chacko</u>, <u>supra</u>; <u>Bryant v. Bell Atl. Md., Inc.</u>, 288 F.3d 124, 132-33 (4th Cir. 2002) (claims of complaint which exceed allegations in the charge fail). Thus, to the extent that the Complaint can be construed as asserting any such claims outside of the ADA, the Defendants' Motion for Summary Judgment is granted.[23]

**Individual capacity claims.**

In the Plaintiff's Complaint, she alleges that the individual Defendants are being sued in their official capacities. [Doc. 1 at 2-3]. Based on this allegation, and the fact that individuals may not be sued under the ADA in an individual capacity, the individual Defendants' move for summary judgment. <u>Jones v. Sternheimer</u>, 387 F.App'x. 366 (4th Cir. 2010) (citing <u>Baird</u> <u>*ex. rel.*</u> <u>Baird v. Rose</u>, 192 F.3d 462, 472 (4th Cir. 1999)). The Plaintiff responds by stating that she "did not sue them individually[.]" [Doc. 56 at 11]. Thus, any

_____

rejects this argument as frivolous.

[23]The Court does not find that such claims have been stated in the Complaint. Since the Plaintiff argued in support of such claims in her responsive brief, however, the Court has addressed the issue. Likewise, the Plaintiff has inserted the words "disparate treatment" in her responsive brief and motion for summary judgment. To the extent any such claim may have been stated in the Complaint, it is barred for the same reasons as stated herein, not having been part of the EEOC Charge.

claims asserted against the individual Defendants in their individual capacities are dismissed.

During oral argument, the Plaintiff referred to her litigation as having been brought against the individual defendants in their "official capacities." It became clear that the Plaintiff had confused a claim pursuant to 42 U.S.C. §1983 with her cause of action pursuant to the ADA.[24]  Such "official capacity" claims against the individuals are merely duplicative of those against the Agency itself.  The Plaintiff conceded that any recovery would come from the governmental agency. The individual defendants should therefore be dismissed from the action.

**The Plaintiff's Motion for Summary Judgment.**

The Court having determined that the Defendants' Motion for Summary Judgment should be granted, the Plaintiff's motion is denied.  In any event, the Plaintiff has made only conclusory allegations in support of her motion which are insufficient to entitle her to relief.

---

[24]The Plaintiff mentioned during argument that she had obtained a document regarding the pro se filing of actions under §1983 and had used it in her preparation. That appears to be the source of her confusion.

38

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 49] is hereby **GRANTED** and this action is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment as a Matter of Law [Doc. 43] is hereby **DENIED**.

Signed: March 1, 2012

Martin Reidinger
United States District Judge

39